# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA

    Plaintiff,

vs.                                                                                    Case No. 5:13-cr-03747 WJ-2

BRIAN ACUNA,

    Defendant.

## MEMORANDUM OPINION AND ORDER DISMISSING PETITION FOR REVOCATION OF SUPERVISED RELEASE

THIS MATTER comes before the Court upon a Petition for Revocation of Defendant's Supervised Release, filed January 28, 2019 (**Doc. 214**). The Court held an evidentiary revocation hearing on March 4, 2019 and received written closing arguments from the parties.

In the petition, the United States Probation office alleges that Defendant violated conditions of his supervised release by (1) possessing firearms and ammunition, and (2) committing a state crime, specifically, Felon in Possession. **Doc. 214.**

### BACKGROUND

On January 25, 2019, at around 8:33 p.m., Deputy Castaneda was behind a blue Ford Expedition. He ran the license plates and found that they belonged to a 1985 gray sedan. He pulled over the Ford Expedition. The driver, Gabriel Salas, stopped and got out of the vehicle, ran northbound and jumped a gate to an apartment complex. Deputy Castaneda chased him on foot and fired his taser, but the probes detached when the Salas made it over a fence. Salas got away. Because Deputy Castaneda was focused on the driver, he did not notice whether the Ford Expedition had other occupants.

Deputy Castaneda turned his attention back to the car, in which he found a (1) Ruger revolver, (2) syringes with heroin, and (3) ammunition. He also found a purse in the front passenger seat, as well as a white laptop with a black cover marked with the letters A-N-G-E. He also found a receipt for a hotel room at the Extend-A-Suites, 2108 Menaul, in Albuquerque, New Mexico. The deputies later confirmed there was a room registered to the suspect, Gabriel Salas.

Deputy Bartram arrived at the Extend-A-Suites hotel at 9:30 p.m. **Doc. 231, p. 10**. After getting a key card from the front desk, the deputies announced themselves and opened the door to room 224. Angelique Herrera, Defendant, and a third person, Mr. Quinones were in the room.

Angelique Herrera exited the room and said that the hotel room belonged to her friend's boyfriend and that she was there to pick up baby formula for her friend. She stated she did not know Gabriel Salas. She stated that she owned a white Apple Macbook that was stolen a week prior. She stated it had a black cover. **Doc. 231, p. 53-54.** This appears to match the description of the laptop found in the vehicle. Deputy Bartram took Defendant out of the room and placed him into custody at around 9:50 p.m. **Doc. 231, p. 82.**

In an open closet deputies found 3 rifles and 2 shotguns in cases. **Doc. 231, p. 55.** The cases were "standing up" and leaning against a wall in the closet. One shotgun was reported stolen. There was also a green ammunition box on the floor of the closet. There is no evidence in the record that the cases were locked. The firearms themselves were not visible.

Deputies found jewelry and collectible coins in both the Ford Expedition and the hotel room. In the hotel room, there was a jewelry stand on one of the desks, more jewelry on another desk, and some on the nightstand. Deputy Castaneda testified he suspected they were stolen because there were also coins and jewelry in the Ford Expedition. **Doc. 231, p. 79-81**. Other than that, he testified there was no evidence they were stolen. **Doc. 231, p. 80.** Deputy Jessen believed

2

that the jewelry was stolen and they were keeping it in that room for safekeeping before moving it.  **Doc. 231, p. 85.**

Defendant told Deputy Jessen that he was giving Angelique Herrera a ride to the hotel room to pick up baby formula.  Neither Angelique Herrera nor Defendant knew the other's name. Angelique Herrera apparently entered the Quality Inn Suites where he was working and asked for a ride.  **Doc. 231, p. 75.**  She testified she had only met him once before.  **Doc. 231, p. 132.** Defendant was scheduled to work at the Quality Inn Suites until 9:00 p.m., and at approximately that time he left to give Angelique Herrera a ride to Extend-A-Suites.  The distance was ¾ of a mile.  Angelique Herrera did not have a key to the room.  When they arrived, she recognized a car she had previously seen at her friend's house. She asked Mr. Quinones, who was working on the car, if he had a key. He subsequently let her in to the room.  **Doc. 231, p. 125-26.**

## DISCUSSION

The petition alleges Defendant violated two conditions of his supervised release:

> (1) you must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon.
> (2) You must not commit another federal, state, or local crime (Felon in Possession).[1]

**Doc. 214.**  A district court may revoke a term of supervised release if it "finds by a preponderance of the evidence that the defendant violated a condition of supervised release." *United States v. Metzener,* 584 F.3d 928, 932 (10th Cir. 2009) (quoting 18 U.S.C. § 3583(e)(3)).

### I. <u>Revocation based on "Access" to Firearms</u>.

At the hearing, the Government initially argued that his supervised release could be revoked based on mere "access" to firearms and argued that this was a different standard than used

---

[1] The Government also argues that Defendant's supervised release should be revoked because he was in possession of stolen jewelry.  Besides the fact that there was no evidence presented that the jewelry was stolen, the petition did not mention the stolen jewelry as a basis for revocation.  Therefore, the Court declines to revoke his supervised release on this basis.

3

in Felon in Possession cases. However, Defendant's criminal judgment and conditions of supervised release does not include the "access" language. It merely provides that Defendant "must not possess a firearm…" **Doc. 190**.

In its briefing, the Government withdrew this argument, and the Court agrees with Defendant that mere "access" to firearms is not a basis to revoke Defendant's supervised release, because no such condition was in his judgment. Had the "mere access to firearms" language been in Defendant's conditions of supervised release, the Court would be ruling in favor of the United States in this matter.

## II.     Revocation Based on Possession of Firearm.

Defendant is accused of (1) possessing a firearm in violation of a condition of supervised release and (2) being a felon in possession. **Doc. 214.** For either alleged violation, the Tenth Circuit applies constructive possession law where, as here, Defendant was found jointly occupying a room with others in which firearms were found. *United States v. Acosta*, 480 F. App'x 923, 925 (10th Cir. 2012)(applying felon-in-possession constructive possession law for violation of supervised release condition that defendant not possess a firearm); *see also* 18 U.S.C.A. § 3583(g).

### A.     Jointly Occupied Room and Constructive Possession law.

"Conviction for possession of a firearm pursuant to § 922 requires proof of "knowing possession." *United States v. Little*, 829 F.3d 1177, 1181 (10th Cir. 2016). "[C]onstructive possession exists when a person not in actual possession knowingly has the *power* and *intent* at a given time to exercise dominion or control over an object." *United States v. Little*, 829 F.3d 1177, 1182 (10th Cir. 2016) (emphasis added). Where, as here, a Defendant is found in a jointly occupied room with others and not in actual possession of the firearm, the defendant's presence in the room and proximity to the firearms is not sufficient to infer intent. *Benford*, 875 F.3d at 1019. Moreover,

the Government must also show a nexus between the defendant and the firearm—specifically, that the defendant had knowledge of and access to the firearm. *United States v. Benford*, 875 F.3d 1007, 1015 (10th Cir. 2017).

However, showing that a defendant has knowledge and access to the firearms is relevant to show that a person has the *power* to exercise control over the firearms. *Benford*, 875 F.3d at 1015. *Benford* also held that there was a reasonable probability that knowledge of and access to a firearm would not similarly compel a jury to conclude that the defendant had the *intent* to control the firearm. *Benford*, 875 F.3d at 1019-20 ("but a properly instructed jury would not be compelled to also conclude Benford *intended* to exercise control over the firearm based on this evidence."). In three cases, the Tenth Circuit held that where a jury was not properly instructed on the intent requirement, there was a reasonable probability that knowledge of and access to the firearms was not sufficient to compel inference that the defendant intended to exercise control over them. *See United States v. Benford*, 875 F.3d 1007, 1020 (10th Cir. 2017) ("[I]n joint occupancy cases, sufficient evidence that the defendant knew of and had access to firearms may not be sufficient to also show he *intended* to exercise dominion and control of them.") (emphasis added); *United States v. Giannukos*, 908 F.3d 649, 656 (10th Cir. 2018) (knowledge of and access to firearms in living room, which was accessible to three people, insufficient to show intent); *United States v. Simpson*, 845 F.3d 1039, 1062 (10th Cir.), *cert. denied,* 138 S. Ct. 140, 199 L. Ed. 2d 188 (2017) (in constructive possession case, guns were found in jointly occupied locations where others had access and although defendant admitted that he handled handguns at some different point than that alleged in indictment). Thus, the Tenth Circuit appears to have left it up to the trier of fact to determine whether knowledge of and access to a firearm is sufficient to infer intent to control the firearms.

5

B.      **Analysis.**

Here, the Court finds that Defendant had knowledge of and access to the firearms. The firearm cases were in an open "closet" that had no doors or door frame, and the cases were identifiable as likely containing firearms. However, the Court finds that this fact, along with the other evidence presented by the Government, is not sufficient to infer that Defendant intended to exercise control over the firearms.

The Government theorizes that Defendant and Angelique Herrera were in the room to move the firearms and allegedly stolen jewelry before the deputies arrived at the room. Generally, evidence of the defendant committing other crimes in a room may support an inference that the defendant intended to exercise control over a weapon. *United States v. Martinez*, 749 F. App'x 698, 705 (10th Cir. 2018) (overwhelming evidence of drug trafficking in bedroom supported inference that defendant intended to exercise control over weapon as part of drug trafficking scheme). The Government essentially argues there is no other plausible reason why Defendant would be in the room than to move the weapons, and that the statements given by Defendant and Angelique Herrera were conflicting and not credible. **Doc. 233, p. 8-9.**

The Court disagrees. The Court has weighed the evidence and finds that the evidence is insufficient to infer that Defendant was part of a conspiracy to move the firearms and jewelry. Defendant has no connection to the hotel room. He was not a registered guest for the hotel room, and there is little to connect him to the firearms or jewelry. Moreover, he has no apparent connection to Gabriel Salas or Angelique Herrera.

He was likely in the hotel room for a short period of time. He left Quality Inn at 9:00 p.m. to drive ¾ of a mile to the Extend-A-Suites hotel room. When they arrived, they then had to find a key to the room from Mr. Quinones, the third person found in the room. The record is unclear

6

when exactly the deputies knocked on the door. But the deputies arrived at the hotel at 9:30 p.m. and took Defendant into custody by 9:50 p.m.

The Court also finds that the evidence does not connect Angelique Herrera to the Ford Expedition. Even if there is evidence to infer that Angelique Herrera is associated with Gabriel Salas, the Court finds that the evidence is insufficient to infer that Defendant was also associated with Gabriel Salas. The Government points to a laptop found in the Ford Expedition and marked with the letters ANGE to show she was likely in the Ford Expedition at the time it was stopped. But the deputies did not see a second person in the car, and she reported the laptop stolen.

The Court generally did not find Angelique Herrera's testimony to be credible. More specifically, the Court does not believe for one second that Angelique Herrera's trip to the Extend-A-Suites hotel room was for the purpose of retrieving baby formula for an unnamed friend of hers. Moreover, the Court finds zero credibility in Angelique Herrera's statement that Defendant went to the hotel room to escort Angelique there and be a "gentleman." **Doc. 231, p. 152.** However, the evidence is simply not enough for the Court to infer that Defendant intended to exercise control over the firearms in the room.

## CONCLUSION

For the reasons stated above, the Court finds that the evidence is insufficient for the Court to make the finding that the Defendant intended to exercise control over the firearms in question and therefore dismisses the petition for revocation.

**IT IS SO ORDERED**

_____
CHIEF UNITED STATES DISTRICT JUDGE